ALTENBERND, Judge.
 

 Jean Atis appeals his judgments and sentences for attempted carjacking and attempted robbery. He maintains that the State improperly questioned him about his
 
 *82
 
 prior record during cross-examination. Although the portion of cross-examination dealing with Mr. Atis’ prior record was poorly handled, we conclude that any error was harmless.
 

 On July 5, 2007, shortly after midnight, a deputy sheriff observed two men fighting next to a taxi van that was stopped in the eastbound lanes of Fletcher Avenue. The deputy activated her emergency lights and broke up the fight. The deputy determined that the fight involved the taxi driver and a passenger. Further investigation revealed Mr. Atis lying on the floor of the rear seat of the taxi.
 

 The taxi driver testified that he was hired by the two men in Ybor City. He had never seen the men before that evening. The men explained that they were leaving Ybor City because Mr. Atis had had too much to drink. Mr. Atis got in the back seat of the cab and lay down, and his friend got in the front seat.
 

 During the drive, the passengers changed their instructions and wanted to go to a different location. Mr. Atis then put his hand around the driver’s neck from the back seat and ordered the driver to give him everything he had. The driver did not immediately obey this instruction. Mr. Atis threatened to shoot the driver and produced a handgun.
 

 The driver observed that the gun appeared to be broken.
 
 [1]
 
 He took the gun away and began to struggle with the men. He claimed that Mr. Atis jumped into the front seat and tried to take control of the taxi. They struggled for a long time. The man who had been in the front seat exited the taxi. When he saw the deputy’s car, he shouted, “police,” and Mr. Atis hid in the back seat of the taxi.
 

 At trial, Mr. Atis chose to testify. He explained that the two men did hire the taxi in Ybor City. He was intoxicated and lay down on the backseat of the taxi to sleep. The next thing he remembered was waking up when the deputy was at the scene. He remembered no fight, knew nothing about the plastic handgun, and only went to the floor of the taxi when the deputy ordered him to get down on the floor and crawl out of the van. Undoubtedly anticipating the State’s cross-examination, Mr. Atis’ attorney asked him if he had ever been convicted of a felony, and he admitted that he had five prior felonies.
 

 During cross-examination, the assistant state attorney returned to the issue of Mr. Atis’ prior record. The transcript reflects the following:
 

 Q. How many times have you been convicted of a felony?
 

 A. Five times.
 

 Q. And how many were for crimes of dishonesty?
 

 [Defense]: Judge, I’m going to object. Can we approach?
 

 The Court: Sure.
 

 (A BENCH CONFERENCE WAS HELD, AS FOLLOWS:)
 

 [State]: That’s proper.
 

 [Defense]: I’m going to object and say I have already asked my client, have you ever been convicted of a felony and how many times. He said five. This is improper for them to go back over it again. [State]: No, it’s—
 

 [Defense]: I reviewed the fact that my client had five felony convictions with him and I reviewed his convictions.
 

 The Court: I know, but it’s a proper question on cross examination. So, if that’s the basis of your objection I’ll
 
 *83
 
 overrule it. But, I don’t know about exactly the way you worded it. I think it’s supposed to be felony or misdemean- or crimes involving dishonesty or moral turpitude is the full question you are supposed to ask so—
 

 [State]: I can ask or how many misdemeanors of dishonesty. But he’s going to say none and then we’re going to be back to the same position, since it’s a felony of dishonesty so—
 

 [Defense]: Well, I don’t know what you want us to do.
 

 The Court: Well, the question is supposed to be asked all in one sentence so—
 

 [Defense]: That’s how I would ask it be asked then.
 

 The Court: Yeah.
 

 [State]: Okay.
 

 (THE BENCH CONFERENCE CONCLUDED.)
 

 Q. Mr. Atis, have you ever been convicted of a felony or misdemeanor crime involving dishonesty?
 

 A. I don’t understand your question.
 

 Q. How many — have you ever been convicted of a felony?
 

 A. Yes.
 

 Q. How many times?
 

 A. Five times.
 

 Q. Have you ever been convicted of any crime, including misdemeanor, of dishonesty?
 

 [Defense]: Same objection, Judge.
 

 The Court: Overruled.
 

 Q. You can answer that?
 

 A. Um, I still don’t understand your question.
 

 Q. Were any of these crimes for anything that is dishonest in nature?
 

 A. I don’t understand.
 

 Q. Okay. Have you ever been convicted of a any [sic] type of crime involving dishonesty, whether it’s a worthless check, a theft charge?
 

 [Defense]: Objection, improper.
 

 The Court: Overruled.
 

 Q. Anything involving any type of dishonest character?
 

 A. Yes.
 

 Q. Okay. How many times?
 

 A. Once.
 

 Obviously, this portion of the transcript is not a model of proper cross-examination and the trial court could have addressed the assistant state attorney’s inexperience and confusion more effectively. The assistant state attorney’s reference to a “felony of dishonesty” explains the source of the confusion during this botched cross-examination.
 

 Mr. Atis had a prior record consisting entirely of felonies. He had convictions for carrying a concealed weapon, felon in possession of a firearm, possession of cocaine, robbery, and uttering a forged instrument. It is apparent that the assistant state attorney believed that one of these felonies, presumably uttering a forged instrument, was a “felony of dishonesty” and that the other felonies were not crimes of dishonesty. Thus, she wished to first establish the number of overall felonies for which Mr. Atis had convictions and then establish how many of these felonies were “crimes of dishonesty.” As explained below, the rule of evidence could be interpreted to permit such a line of questioning, but established procedures do not distinguish between felonies that are or are not crimes of dishonesty. The “crimes of dishonesty” category is used to allow cross-examination about the commission of crimes that typically are misdemeanors.
 

 Section 90.610(1), Florida Statutes (2007), provides:
 

 
 *84
 
 A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment....
 

 Under Florida law, all crimes “punishable by death or imprisonment in excess of 1 year” are classified as felonies.
 
 See
 
 § 775.08(1), Fla. Stat. (2007). Although it is plausible that the phrase “or if the crime involved dishonesty or a false statement regardless of the punishment” could be interpreted to include felonies already described in the preceding phrase, it is well established that these two phrases describe two distinct groups of offenses that do not overlap. As Justice Pariente explained when she was a member of the Fourth District, “The effect of the subsection, as amended by the legislature and as adopted by the supreme court, is to allow impeachment for all felonies, but restrict impeachment to only those misdemeanors involving dishonesty or false statement.”
 
 Both v. State,
 
 647 So.2d 881, 884 (Fla. 4th DCA 1994). As such, when a witness has been convicted of a felony, the other party may not inquire further into whether the felony involved dishonesty or false statement because doing so “would have the impermissible and unintended effect of elevating certain felonies over others.”
 
 Id.
 

 In
 
 Florida Evidence,
 
 Professor Eh-rhardt suggests the following line of questions to comply with this rule of procedure:
 

 Q. “Have you ever been convicted of a felony?”
 

 A. “Yes.”
 

 Q. “How many times?”
 

 or, counsel may ask, if applicable,
 

 Q. “Have you ever been convicted of a crime involving dishonesty or false statement?”
 

 A. “Yes.”
 

 Q. “How many times?”
 

 Charles W. Ehrhardt,
 
 Florida Evidence
 
 § 610.6, at 590-91 (2009 ed.).
 

 At least when none of the offenses were committed in another state, the more specific line of questions suggested by Professors Eleazer and Weissenberger may be more precise and prevent some confusion about whether crimes of dishonesty involve felonies or misdemeanors:
 

 Counsel to witness (cross-examination): Have you ever been convicted of a felony?
 

 Witness: Yes.
 

 Counsel: How many times?
 

 Witness: Two.
 

 Counsel: Have you ever been convicted of a misdemeanor involving dishonesty or false statement?
 

 Witness: Yes.
 

 Counsel: How many times?
 

 Witness: One.
 

 William R. Eleazer & Glen Weissenberger,
 
 Florida Evidence 200U Courtroom Manual
 
 404 (LexisNexis 2004).
 

 In this case, it is noteworthy that the error could have been better preserved. In front of the jury, Mr. Atis explained three times that he did not understand the question. In the end, when the assistant state attorney asked whether he had ever been convicted of “any type of crime,” the objection was merely that the question was “improper.” It is obvious that the assistant state attorney knew that she had no evidence of a prior misdemeanor that was a crime of dishonesty. If defense counsel or the court had explained the limits of this rule of evidence to the assistant state attorney, she would not have persisted in this questioning. Throughout the ques
 
 *85
 
 tioning, the assistant state attorney clearly believed in good faith that she could ask the defendant about a “felony of dishonesty.”
 

 During closing argument, both defense counsel and the assistant state attorney discussed Mr. Atis’ prior record. Without objection, the assistant state attorney argued: “Mr. Atis got up here, found out [that he’s] been convicted of five felonies including one for dishonesty. That’s something that you all can consider in your deliberations. That’s something that’s important.”
 

 We conclude, however, that the error was harmless beyond a reasonable doubt.
 
 See State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986). The clumsy manner in which these questions were asked did not result in any detailed description of his prior offenses. The assistant state attorney’s prompt that the offense could be an offense like a “worthless check or a theft charge” is not a description of his prior record and did not suggest to the jury that he had an exceptionally bad prior record. At worst, it repeated Mr. Atis’ admission that he had committed five felonies on more occasions than necessary. Interestingly, Mr. Atis apparently reached the same conclusion as the assistant state attorney that his felony conviction for uttering a forged instrument was his one felony of dishonesty. Although the assistant state attorney did mention the “felony of dishonesty” in closing argument, there was no confusion that the total number of prior offenses was five and not more. In the overall context of this trial, we conclude that the error is harmless.
 

 Affirmed.
 

 LaROSE and KHOUZAM, JJ„ Concur.
 

 [1]
 

 . The sheriffs department recovered the gun at the scene of this crime. It was a plastic replica of a dock handgun and it was broken into several pieces when recovered.